## STATE vs. HUGO RIDDELL.

### FEBRUARY 18, 1916.

PRESENT: Johnson, C. J., Parkhurst, Sweetland, Vincent, and Baker, JJ.

*(1) Criminal Law. Witnesses. Oath.*

After a witness had been sworn objection was made by defendant to his testifying on the ground that he was an atheist; and upon examination in support of the objection, the witness stated that he believed in the same God all people believe in. The opportunity was then offered the defendant to have the witness affirm in addition to the oath, but this he did not care to have done:—

*Held,* that, while the decision of the trial court as to the competency of a witness is not final much must be left to his discretion, and under the circumstances it was not error to permit the witness to testify.

*(2)  Criminal Law.  Oath.  Affirmation.*

The taking of an oath is not the only way in which a witness may become competent to testify.  An affirmation under the pains and penalties of perjury is sufficient.

*(3)  Exceptions.*

An exception must be to some action or ruling of the court, and exception simply taken to remarks of counsel concerning which the court was not called upon to act, will not be considered.

*(4)  Trial.  Taking Case From Jury.*

Where neither the motion to take a case from the jury on account of alleged objectionable remarks by counsel, as it appears in the record, nor the bill of exceptions, disclose the objectionable matter, and it appears that the court assured defendant that the jury would be instructed to disregard the remarks, the court must presume in the absence of information to the contrary that this undertaking of the court was carried out, and as such a matter is largely, if not wholly, in the discretion of the trial court, exception to the refusal of the court to remove the case will be overruled.

*(5)  Criminal Law.  Indictments.  Motion to Quash.*

After pleading to an indictment and proceeding to trial it is too late to move to quash for failure to charge the offence with sufficient particularity.

*(6)  Criminal Law.  Accomplice.*

Under the common law the testimony of an accomplice, without corroboration will support a conviction, and there is no statute modifying the rule in this State, and while such uncorroborated testimony is less satisfactory than that of other witnesses, this refers to the credibility of the witness rather than to his competency, and while such evidence should be received with caution, if believed, a jury is justified in basing their verdict upon it, and in instructing the jury in the case at bar that they were only to consider the testimony of the accomplice so far as they might find it corroborated by other witnesses, the trial court went further than the absolute requirement of the law, although the court cannot say such instruction was improper or was not justified by the circumstances.

*(7)  Criminal Law.  Accomplice.*

Mere knowledge as to arrangements being made between the father of witness and the defendant, for the commission of a crime, and failure of witness to take any steps to prevent the crime is not sufficient to constitute the witness an accomplice.

*(8)  Criminal Law.  Accomplice.  Accessory After Fact.  Corroboration.*

An accessory after the fact is not an accomplice whose testimony requires corroboration.

*(9)  Criminal Law.  Accomplice.*

Where there is no dispute as to the attitude of a witness toward the transaction, it is a question of law for the court whether such acts make him an accomplice, and not a question to be submitted to the jury.

*(10)   Evidence.   Corroboration.*

It is not necessary that the testimony of a witness should be corroborated in every part, but it is competent for the jury if they find that some material part is corroborated to believe him as to other parts which are not corroborated.

INDICTMENT.   Heard on exceptions of defendant and overruled.

VINCENT, J.   This is an indictment charging the defendant with an attempt to burn certain goods, wares, and merchandise of one Joseph Goldstein, which were insured against loss by fire by the Rochester German Underwriters Agency of Rochester, New York, and the Old Colony Insurance Company of Boston, Massachusetts, with the intent to injure and defraud said insurance companies.

The defendant was tried upon said indictment in the Superior Court and a verdict of guilty was rendered by the jury.   A motion for a new trial was denied by the trial court and the case is now before us on the defendant's bill of exceptions setting forth sixty-five assignments of error.   As we are advised, through the defendant's brief, the exceptions numbered 1, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 14, 15, 16, 17, 18, 21, 22, 23, 24, 25, 27, 28, 32, 33, 36, 37, 38, 40, 44, 46 are abandoned.   The defendant's exception numbered 2 is based upon the refusal of the trial court to exclude Joseph Goldstein, as a witness, on the ground that he was an atheist and therefore any oath which might be administered to him would be meaningless.

(1)   It appears from the transcript of the proceedings in the Superior Court that Joseph Goldstein having been called as a witness by the State and having been sworn, the defendant objected to his testifying on the ground that he was an atheist and a non-believer in the existence of any God.   After some controversy, participated in by counsel and court, the defendant claimed the privilege of examining the witness as to his belief in God and elicited from him the statement that he did believe in God, the same God all people believe in.   The defendant, however, still

pressed his objection and the court expressed its willingness to have the witness affirm, in addition to his oath, if the defendant so desired. The defendant however did not see fit to avail himself of the opportunity to have the witness affirm and his examination proceeded.

We are well aware that it has been held, notably in the older decisions, that a person who does not believe in the existence of a God nor in a future state of rewards and punishments cannot be a competent witness in court. And that it has also been held that a disbelief in the existence of God must be shown by the previous declarations of the person offering himself as a witness and that such declarations having been shown the person cannot testify in his own behalf in restoration of his competency for the reason that he would be no more affected in his answers in that regard than he would be in his testimony regarding the facts of the case in which it was proposed to examine him. *Jackson ex dem. Tuttle* v. *Gridley*, 18 John. 98; *Curtiss* v. *Strong*, 4 Day 51; *Commonwealth* v. *Smith*, 2 Gray. 516.

In the later decisions however the rule regarding the competency of witnesses has been considerably relaxed and the more modern rule seems to be that a witness may testify under conditions which amount to the fear of punishment, either here or hereafter, in case he should testify falsely. In 3 Wigmore on Evidence, Sec. 1827, we find it stated that, "The true purpose of the oath is not to exclude any competent witness, but merely to add a stimulus to truthfulness wherever such a stimulus is feasible. Until the 1800s, however, this advanced notion of its purpose had not been reached. The requirement was inexorable; with the result that three classes of persons were absolutely excluded from testifying; namely, adults having an atheistical belief, infants lacking any theological belief, and adults having the requisite belief, but forbidden by conscience to take an oath. It came gradually to be perceived that the use of the oath, not to increase testimonial efficiency, but to exclude qualified witnesses, was not only,

an abuse of its true principle, but also a practical injustice to suitors who needed such testimony. . . . The first statutory efforts in England to relieve from this injustice are found at the end of the first quarter of the 1800s. To-day, practically everywhere, the injustice is remedied. Arguments are no longer needed to prove the impropriety of the old inexorable rule. It is conceded that the oath should be dispensed with for appropriate classes of witnesses."

(2)    The taking of an oath is not the only way in which a witness may become competent to testify in court. Many witnesses affirm to testify the truth, etc., under the pains and penalties of perjury and in our courts that is deemed sufficient to make the witness competent to testify. By our statute, Chapter 32, Section 10, it is provided that the word "oath" shall be construed to include "affirmation."

In the present case the witness, Joseph Goldstein, was sworn without objection, the counsel for the defendant making his objection for the first time after the administration of the oath. Counsel for defendant, upon his own request, then proceeded to examine Goldstein, under the oath which had been administered to him, as to his belief in God, and obtained from him the statement before referred to that he believed in God, the same God all people believed in. It was then left to the option of the defendant to have this witness affirm, in addition to the oath which had already been administered, but this he did not care to have done. The trial judge is in a position to estimate the situation and to reach a proper conclusion as to the competency of the witnesses which may be produced before him and while his decision may not be final much must be left to the exercise of his discretion under all the circumstances of the case with which he is fully acquainted. It is not desirable to establish a hard and fast rule which shall result in depriving litigants of testimony if it can be admitted under proper safeguards.

Having examined the witness under oath as to his belief in a God, and receiving the answers that he did, it would

hardly be consistent to permit the defendant to call other witnesses to contradict him by showing previous, contrary declarations made in their presence. We think that under the circumstances of this case it was not error for the trial court to permit Joseph Goldstein to testify.

(3)    The defendant's exception numbered 53 is to the refusal of the trial court to take the case from the jury at the close of the attorney general's argument on the ground that the latter had said to the jury in the course of his argument. (1) "The defendant has not put his character in issue, and the State's hands are, of course, tied. It is quite often the case in criminal cases for the defendant to produce witnesses to testify as to his good character. In this case the defendant has not done this, so the State is unable to go into this matter." (2) "The defendant's counsel has made a motion that the jury be locked up during the consideration of this case. Why is this?" and (3) "We believe this defendant is guilty, not only of this crime, but of other crimes."

While the impropriety of these remarks is apparent, we do not see that the exception thereto presents any question for our consideration. An exception to be of any value must be taken to some action or ruling of the court. The exception in question is not so taken. It is simply taken to remarks of counsel concerning which the court has not been called upon to act or to make any ruling. It would have been competent for the defendant to request the court to instruct the jury to disregard these remarks and upon the refusal of the court so to do he might have had an exception. *State* v. *Farr*, 29 R. I. 72. The jury however were carefully and properly instructed upon the points referred to in the remarks of counsel for the State and therefore it does not seem to us that the defendant could have been prejudiced thereby.

The defendant's exception numbered 45 is to the refusal of the trial court to take the case from the jury on the ground (4) that certain remarks or statements made by the attorney

general, during the progress of the trial and in the presence of the jury, tended to deprive the defendant of a full, fair, and impartial trial. This motion as we find it in the transcript before us does not disclose the alleged objectionable matter nor is the same revealed in the defendant's bill of exceptions. Whatever it might have been it appears that the trial court assured the defendant that the jury would be instructed to disregard it and we must presume, in the absence of any information to the contrary, that the undertaking of the court in that respect was carried out. The matter of taking a case away from a jury on account of remarks made by counsel, in the progress of the trial, is largely, if not wholly, in the discretion of the court which is able at all times to instruct the jury to disregard and exclude from their consideration any occurrence which might otherwise be prejudicial to the defendant.

(5) The defendant's exception numbered 35 is to the refusal of the trial judge, at the close of the State's case, to quash the indictment. The ground of the defendant's motion seems to be that the indictment failed to set forth with sufficient particularity the offence with which the defendant was charged. After the defendant had pleaded to the indictment and the trial had proceeded it was too late to make a motion of this character. If the charge in the indictment was not set forth with sufficient distinctness he might have taken advantage of it earlier and not having done so he must be deemed to have waived it and we think that the court was right in denying the motion.

The defendant's exceptions numbered 60 and 61 are to the refusal of the trial court to charge in accordance with his 7th and 8th requests. (1) "If the testimony in the case that Riddell was not at the scene of the crime outweighs the evidence offered by the State for the purpose of proving him at the scene of the crime, at the time the crime was committed, the verdict should be for acquittal;" and (2) "That if the evidence offered by the defendant in support of his alibi, when considered by itself, raises a reasonable

doubt in the minds of the jury as to the guilt of the accused, he must be acquitted." These requests had already been covered in the charge of the court and were therefore properly refused.

Without undertaking to discuss severally the numerous exceptions which now remain, we will proceed to consider such questions as seem to us to be of sufficient importance to require consideration.

Joseph Goldstein, the proprietor of the store which the defendant was charged with attempting to burn and for which attempt he was subsequently indicted and convicted, was a witness for the prosecution. He was beyond question an accomplice of the defendant and the defendant claims that he could not be convicted upon the testimony of an accomplice unless such testimony was corroborated by that of other witnesses or by circumstances surrounding the transaction, and the defendant also claims that no such corroboration is to be found in the evidence.

(6)    Before examining the evidence with a view to ascertaining whether or not it contains corroborative facts or circumstances, it may be well to determine whether or not such corroboration is required. In some states it is provided by statute that the evidence of an accomplice, if uncorroborated, shall not be sufficient to convict. In this State however we have no such statute. Under the common law it is well settled that the testimony of an accomplice, entirely without corroboration, will support a conviction. 1 R. C. L. 166 and cases cited; *U. S.* v. *Lancaster,* 44 Fed. 896; *Cross* v. *The People,* 47 Ill. 152; *Commonwealth* v. *Holmes,* 127 Mass. 424. It is doubtless true that the uncorroborated testimony of an accomplice is less satisfactory than that of other witnesses and should be more carefully scrutinized, but this has reference to the credibility of the witness rather than to his competency to testify. While the uncorroborated testimony of the accomplice should be received with caution, yet if the jury believe it they would be justified in basing their verdict upon it. In

33

the adjudicated cases it will be found that judges have frequently instructed the jury to disregard the testimony of an accomplice unless they find in the testimony of other witnesses or in the circumstances surrounding the case some corroboration. An examination of these cases will disclose that in many instances such instructions are based upon a statute providing that there must be corroborating testimony in order to convict. There are some cases which hold that in practice the judge in his discretion may thus instruct the jury, in the interests of justice, even in the absence of any particular statute to that effect. *U. S.* v. *Lancaster*, 44 Fed. 896; *Commonwealth* v. *Holmes*, 127 Mass. 424.

In the case at bar the trial court instructed the jury that Joseph Goldstein was an accomplice of the defendant and that they were only to consider his testimony so far as they might find it corroborated by other witnesses. In this instruction the trial court went further than the absolute requirement of the law, although we cannot say that such instruction was improper or was not justified by the circumstances of the case. However that may be, the defendant cannot complain if the instruction of the court was more favorable to him than the law required.

The defendant also contends that the witness, Morris Goldstein, the son of Joseph Goldstein, before mentioned, was also an accomplice and that his testimony must therefore be corroborated. Morris Goldstein was a young man eighteen years of age. He had been in and about the premises in question and while not having taken any part in the interviews and arrangements between his father and the defendant, looking to the destruction of the property by fire, he had overheard much that had passed between them and knew that the defendant had received money from his father as compensation for the planning and carrying out of the job. The testimony does not disclose that Morris Goldstein took any active part in the plans of his father and the defendant or made any suggestion or gave any advice in relation thereto. The knowledge which he

had as to what was going on and his failure to take any steps to prevent the crime would not be sufficient to constitute him an accomplice. *Levering* v. *Commonwealth*, 132 Ky. 666.

The only connection of Morris Goldstein with the whole transaction was subsequent to the alleged attempt to burn and consisted in his taking from the defendant, at the defendant's request, and throwing away, an empty can which had been used by the defendant to convey gasoline to the Goldstein premises with a view to facilitating the conflagration. If Morris Goldstein can be said, upon this state of facts, to have been an accessory he was an accessory after the fact. The act of disposing of the can had no relation to the accomplishment of the crime which the defendant and Joseph Goldstein were undertaking. At most it could be nothing more than an attempt to suppress evidence after the crime had been committed. The weight of authority however seems to hold that an accessory after the fact is not an accomplice whose testimony requires corroboration. 1 R. C. L. 159; *Levering* v. *Commonwealth*, 132 Ky. 666; *State* v. *Phillips*, 18 S. D. 1.

The defendant further contends that the question as to whether Morris Goldstein was an accomplice should have been left to the jury. That might be so under some circumstances, but not under the circumstances of the present case. There is no dispute here as to the attitude of Morris Goldstein in relation to this transaction. He was told by the defendant, after all the arrangements had been completed and the automatic operation of the combined contrivances had been established, to take the empty gasoline can and throw it away. There are no facts in dispute regarding the acts of Morris Goldstein and it therefore becomes a question of law for the court to say whether or not those acts make him an accomplice. 1 R. C. L. 158 and cases cited.

If we should assume that there must be some corroboration of the testimony of Joseph Goldstein and Morris

Goldstein, his son, in order that the jury might be enabled to consider such testimony we think that the testimony of Sarah Goldstein, Ulder LaChappelle and John O'Donnell furnish facts and circumstances which are, to some extent, corroborative of the testimony of both Joseph and Morris. It is not necessary that the testimony of a witness should be corroborated in every part. It is competent for the jury, if they find that some material part of the testimony of the witness is corroborated, to believe that he speaks the truth as to other parts which are not corroborated. 1 R. C. L. 169.

It is not necessary for us to determine, in the case before us, whether the act of Morris Goldstein, in disposing of the can under the conditions described, made him an accessory because if he was an accessory it was after the fact and he would not be an accomplice. Unless he was an accomplice there would be no necessity for corroborating his testimony in any aspect of the case. Besides it is extremely doubtful if, under the facts of the present case, he could be considered an accessory after the fact.

There is no statute in this State requiring the testimony of an accomplice to be corroborated. There is nothing in the transcript of testimony to show that Morris Goldstein was an accessory before the fact. There is evidence of facts and circumstances which go to corroborate the testimony of both of these witnesses, even if it be assumed such corroboration is necessary.

After a careful examination of the transcript of testimony in connection with the defendant's bill of exceptions we do not find any other questions raised by the defendant which merit particular consideration.

The defendant's exceptions are all overruled and the case is remitted to the Superior Court for sentence.

*Abbott Phillips*, Assistant Attorney General for State.

*A. B. Crafts, Edward W. Bradford*, for defendant.