GSM INDUSTRIAL, INC.

v.

GRINNELL FIRE PROTECTION SYSTEMS COMPANY, INC., et al.

No. 2011–140–Appeal.

Supreme Court of Rhode Island.

July 5, 2012.

Jeffrey Biolchini, Esq., Providence, for Plaintiff.

Joseph–Anthony DiMaio, Esq., Pawtucket, for Defendant.

Present: SUTTELL, C.J., GOLDBERG, FLAHERTY, ROBINSON, and INDEGLIA, JJ.

## OPINION

Justice FLAHERTY, for the Court.

This case requires us to don our miner's helmets and once again descend into the subterranean labyrinth that is the Rhode Island mechanic's-lien statute. The statute attempts to strike a delicate balance between the rights of contractors, craftsmen, artisans, and furnishers of materials on the one hand and often innocent landowners on the other when a general contractor, hired by the landowner, fails to pay its subcontractors. These circumstances result in a lien created in favor of the subcontractor that is imposed on the landowner's property without a hearing and with minimal due process. Here, the plaintiff, GSM Industrial, Inc., was a subcontractor that entered into an agreement with AirPol, Inc., a general contractor, to install an air-pollution-control mechanism on property owned by the defendant, Grinnell Fire Protection Systems Company, Inc. When AirPol failed to pay GSM the balance of its fee, GSM filed a complaint to enforce a mechanic's lien against Grinnell. The particular issue before us is whether a notarial acknowledgment in a subcontractor's notice of intention satisfies the statutory requirement that such a statement be "under oath." A justice of the Superior Court ruled that a Pennsylvania notary public's "acknowledgement" was insufficient to satisfy the oath requirement, and, as a result, the notice was fatally defective.

We agree, and for the reasons set forth in this opinion, we affirm the judgment of the Superior Court.

## I

## Facts & Travel

The facts of this case are clear and undisputed; in point of fact, they are a textbook example of a mechanic's-lien dispute. In 2009, Tyco Fire Products, LP, contracted with AirPol to build an air-pollution-control system on property owned by Grinnell in Cranston.[1] In connection with this project, AirPol hired GSM to build a wet electrostatic precipitator and provide additional component parts.[2] On August 24, 2009, AirPol paid GSM a deposit of $23,199. The precipitator and the other parts were delivered and installed on Grinnell's property in April 2010. Lamentably, GSM contends that despite repeated demands for payment, AirPol has failed to pay the balance due on its agreement, which amounts to $64,525.44. It is undisputed that Grinnell paid AirPol in full for its services, and that Grinnell had no direct contact or contractual relationship with GSM. Nevertheless, GSM sought to vindicate its statutory rights, as it is freely entitled to do, under the Rhode Island mechanic's-lien statute.

The crux of this matter is whether GSM complied with the statutory requirements for executing a notice of intention to enforce a mechanic's lien. General Laws 1956 § 34–28–4(a), which this Court previously has described as "a single sentence of gargantuan length," *Faraone v. Faraone*, 413 A.2d 90, 91 (R.I.1980), sets forth a long series of prescriptions that control both the substance and procedure related to a notice of intention. Section 34–28–4(a) states in relevant part:

"(a) Except as provided in § 34–28–7, any and all liens claimed or that could be claimed under §§ 34–28–1, 34–28–2 or 34–28–3 *shall be void and wholly lost* to any person claiming under those sections *unless* the person shall, before or within two hundred (200) days after the doing of such work or the furnishing of such materials, mail by prepaid registered or certified mail, in either case return receipt requested, *a notice of intention, hereinafter described,* to do work or furnish material, or both, together with a statement that the person so mailing may within two hundred (200) days after the doing of the work or the furnishing of the materials, file a copy of such notice of intention in the records of land evidence in the city or town in which the land generally described * * * is located * * *." (Emphases added.)

The next section of the statute, § 34–28–4(b), addresses the contents of the notice and sets forth the six elements that every notice of intention must contain. Furthermore, it requires that "[t]he notice of intention shall be executed *under oath* * * *." *Id.* (emphasis added).

In September 2010, GSM produced a notice of intention, sent it to Grinnell, and recorded it in the land evidence records of

---

1. Grinnell is a subsidiary of Tyco.

2. An electrostatic precipitator is: "A device which separates particles from a gas stream by passing the carrier gas between pairs of electrodes across which a unidirectional, high-voltage potential is placed. The particles are charged before passing through the field and migrate to an oppositely charged electrode. These devices are very efficient collectors of small particles, and their use in removing particles from power plant plumes and in other industrial applications is widespread." International Union of Pure and Applied Chemistry, *Glossary of Atmospheric Chemistry Terms* 2186 (1990).

the City of Cranston. The notice purports to contain the six requirements of § 34–28–4(b), and it was signed by GSM's president, James K. Tower, III. Tower executed the notice in Pennsylvania. The notice's notarial clause states, "The foregoing instrument was acknowledged before me this 13th day of September, 2010 by James K. Towers, III of GSM Industrial, Inc., a Pennsylvania corporation, on behalf of the corporation[.] Mr. Towers is personally known to me or has produced valid state issued identification[.]" Believing that it had satisfied all of the statutory prerequisites, GSM filed a complaint to enforce a mechanic's lien on October 25, 2010, in the Providence County Superior Court.

On December 23, 2010, Grinnell filed an answer, a motion to dismiss the complaint pursuant to Rule 12(b)(6) of the Superior Court Rules of Civil Procedure, a Rule 12(c) motion for judgment on the pleadings, and a motion for summary judgment pursuant to Rule 56 of the Superior Court Rules of Civil Procedure. A hearing on those motions was held on April 4, 2011, before a justice of the Superior Court. The primary bone of contention between the parties was whether the notice of intention was executed "under oath" in satisfaction of § 34–28–4(b). Grinnell argued that the notice contained an acknowledgement, not an oath, noting in particular that the document included no variation of the phrase "signed and sworn." GSM argued

that the notice was in fact signed under oath, citing a later-executed affidavit from Tower to support that contention.[3] Additionally, it contended that even if the notice was not executed under oath, the deviation was minor, and the complaint should not be dismissed in light of the "liberal remedy" specified by the statute. Lastly, GSM argued that the oath requirement was directory, not mandatory, and that the lien therefore should survive any error in that respect. After considering the arguments of the parties, the hearing justice found that the language of § 34–28–4(b) requires that the notice of intention be executed under oath, and that the oath requirement had not been satisfied by GSM consistent with the statutory scheme. Therefore, the hearing justice granted Grinnell's motions, and a final judgment was entered in favor of defendant.[4] GSM timely appealed that judgment to this Court.

## II

### Standard of Review

Although it is not entirely clear from the record which of defendant's motions the hearing justice granted or which rule resulted in the dismissal of GSM's complaint, the issue presented to this Court is indisputably one of statutory interpretation. "Questions of statutory interpretation are reviewed *de novo* by this

---

**3.** Mr. Tower's affidavit states:

"In signing the Notice of Intention, I did, in fact, swear to the truth of all the facts set forth in the Notice of Intention, I acknowledged them as true, affirmed them, avouched that they were accurate, well aware that the document would be used in a court proceeding and that any misrepresentation by me in doing so would expose me to the penalties of perjury[.]"

**4.** It is not clear from the record under which rule of civil procedure the hearing justice

determined the issue presented to him. The record contains an order dismissing the matter, presumably based on Rule 12 of the Superior Court Rules of Civil Procedure, as well as a judgment in favor of defendant pursuant to Rule 54(b) of the Superior Court Rules of Civil Procedure. As discussed *infra*, however, the issue presented is one of statutory interpretation, and the standard of review that this Court applies to such an issue is the same, irrespective of the rule relied upon by the hearing justice.

Court." *D'Amico v. Johnston Partners,* 866 A.2d 1222, 1224 (R.I.2005) (citing *Webster v. Perrotta,* 774 A.2d 68, 75 (R.I. 2001)). "In carrying out our duty as the final arbiter on questions of statutory construction, '[i]t is well settled that when the language of a statute is clear and unambiguous, this Court must interpret the statute literally and must give the words of the statute their plain and ordinary meanings.'" *Id.* (quoting *Accent Store Design, Inc. v. Marathon House, Inc.,* 674 A.2d 1223, 1226 (R.I.1996)). "In matters of statutory interpretation our ultimate goal is to give effect to the purpose of the act as intended by the Legislature." *Id.* (quoting *Webster,* 774 A.2d at 75).

### III

#### Arguments of the Parties

The arguments advanced by the parties on appeal are substantially the same as those that they presented to the hearing justice in the Superior Court. GSM argues that the hearing justice erred because § 34–28–4(b) "does not require use of any select wording in the notary clause" and Mr. Tower, in his later-sworn affidavit, attested that "he understood the notary clause as requiring him to swear that the contents of the Notice were true." GSM also contends that even if the notice of intention is determined not to meet the formal statutory requirements, § 34–28–4 does not require dismissal of the complaint because, according to this Court's holding in *Pezzuco Construction, Inc. v. Melrose Associates, L.P.,* 764 A.2d 174 (R.I.2001), the oath requirement is "directory" rather than mandatory. GSM further asserts that the statute does not require the "magic words" sworn or affirmed, and that it "defies common sense" to dismiss the complaint because the notarial clause uses the word acknowledged when it could be amended without difficulty.

Conversely, Grinnell argues that the notice of intention was not executed properly by GSM. Grinnell contends that a notarial acknowledgment has "special significance" and simply reflects that the signatory is known to the notary, and that the signature was his or her free act and deed; it has nothing to do with swearing that the facts contained in the document are true. Furthermore, Grinnell argues that the statutory scheme requires strict compliance with § 34–28–4(b), and that the hearing justice did not err when he concluded that GSM's failure to execute the notice of intention under oath rendered the lien "wholly lost."

### IV

#### Analysis

#### A. Did the Notice of Intention Satisfy the Oath Requirement?

After a thorough review of the record and the applicable law, we conclude that the trial justice did not err when he dismissed plaintiff's complaint for failure to execute its notice of intention under oath. Notaries public are public officials that perform a number of vital functions in both the legal and business communities. Among their powers, notaries have the authority both to acknowledge documents and to administer oaths. *See* G.L.1956 § 36–2–1. We disagree with plaintiff's argument, however, that these two duties are, in a sense, fungible. In *Chrysler First Financial Services Corp. v. Van Daam,* 604 A.2d 339, 341 n. 1 (R.I.1992), this Court distinguished a sworn affidavit from an acknowledged statement: "[The defendant's] unsworn statement merely contains the acknowledgement of a notary that [the defendant's] signature is his free act and deed. The unsworn statement is devoid of an acknowledgement that the assertions made within are sworn to before

a notary." While *Van Daam* concerned an "affidavit" of indigency rather than a notice of intention to enforce a mechanic's lien, each document similarly was required to be executed under oath, and we can conceive of no rational distinction between them in this respect. *See id.*

■ The plaintiff's citation to Black's Law Dictionary is unavailing. Although it is true that the term "acknowledge" is defined as "[t]o recognize (something) as being factual or valid" or "[t]o confirm as genuine," that same venerable tome provides a much more specific definition for that same word with respect to notaries or other public officers. Black's Law Dictionary 25 (9th ed.2009). It defines "an acknowledgement" as "[a] formal declaration made in the presence of an authorized officer, such as a notary public, by someone who signs a document and confirms that the signature is authentic." *Id.* Furthermore:

> "In most states, the officer certifies that (1) he or she personally knows the document signer or has established the signer's identity through satisfactory evidence, (2) the signer appeared before the officer on the date and in the place * * * indicated, and (3) the signer acknowledged signing the document freely." *Id.*

These definitions accord with the explanation provided by another distinguished guide to legal terms:

> "An acknowledgement is a verification of the fact of execution, but is not a verification of the contents of the instrument executed. In other words, an acknowledgement is the method of authenticating an instrument by showing it was

the act of the person executing it, while a verification is a sworn statement as to the truth of the facts stated within an instrument." 1A C.J.S. *Acknowledgements* § 1 at 125 (2005).

Plainly, the notarial acknowledgment in GSM's notice of intention attests to the execution of the document by Mr. Tower, not to his verifying its contents under oath.[5]

■ The fact that Mr. Tower later professed in a subsequent affidavit that, in his subjective belief, the notarial acknowledgment was equivalent to an oath is of no significance to us.[6] Under the statutory scheme at issue here, the oath serves two purposes. First, like the oath taken by a witness testifying in a courtroom, the purpose is "merely to add a stimulus to truthfulness wherever such a stimulus is feasible." *State v. Riddell,* 38 R.I. 506, 509, 96 A. 531, 532 (1916). As Rule 603 of the Rhode Island Rules of Evidence states, an oath helps to ensure that a witness will "testify truthfully" and is "calculated to awaken the witness' conscience and impress the witness' mind with the witness' duty to do so." However, within the framework of § 34–28–4, the oath requirement manifestly serves an additional purpose: to militate against meritless claims. It provides the property owner—sometimes an innocent party whose property is about to be encumbered with minimal due process—with actual notice and some assurance that the lienor may be held accountable if his statements prove to be frivolous misrepresentations or simply vexatious assertions. Hence, even taking Mr. Tower's later affidavit at face value, his subjective belief that a false statement in the notice of intention could subject him to

---

5. Although not required, the statutory form includes the terms "signed and sworn" in its suggested notarial clause.

6. We cannot help but note that in the affidavit that Mr. Tower executed, the notarial clause expressly attests to the fact that the document was "sworn and subscribed to."

the pains and penalties of perjury when that was objectively untrue cannot save GSM's lien.

## B. Is the Oath Requirement Directory or Mandatory?

We are likewise not persuaded by plaintiff's argument that even if the notice of intention was improperly executed, the action nevertheless should be saved because the oath requirement is "directory" and not "mandatory." In *Faraone*, 413 A.2d at 92, this Court held that the statutory requirement that the prospective lienor mail a copy of the notice of intention to the building inspector to perfect the lien was directory, not mandatory, and therefore failure to do so was not fatal to the lienor's action.[7] However, in *Faraone* the Court acknowledged that it was confronted with ambiguous language, and was therefore required to engage in statutory construction. *See id.* ("While we realize that *reasonable minds may differ* on the interpretation of the subordinate clauses and the participial phrases contained in the first sentence of the statute, we believe that the foregoing resolution accords the benefit of actual notice to the owner when such is possible * * *.") (emphasis added); *see also Bliss Mine Road Condominium Association v. Nationwide Property and Casualty Insurance Co.*, 11 A.3d 1078, 1084 (R.I.2010) (defining ambiguity as terms " 'reasonably susceptible of different constructions' "). We detect no such ambiguity here.

■■ In our opinion, the statutory requirement that the notice of intention be executed under oath "is expressed in clear, unequivocal, and mandatory language." *Pezzuco*, 764 A.2d at 177. "It is well settled that when the language of a statute is clear and unambiguous, this Court must interpret the statute literally and must give the words of the statute their plain and ordinary meanings." *Ryan v. City of Providence*, 11 A.3d 68, 71 (R.I.2011) (quoting *Accent Store Design, Inc.*, 674 A.2d at 1226). We are cognizant that "our ultimate goal is to give effect to the purpose of the act as intended by the Legislature," *Ryan*, 11 A.3d at 70–71 (quoting *D'Amico*, 866 A.2d at 1224), and that the mechanic's-lien statute "should be construed to carry out its purpose of ' * * * afford[ing] a liberal remedy to all who have contributed labor or material towards adding to the value of the property to which the lien attaches.' " *Faraone*, 413 A.2d at 91 (quoting *Kelley v. Dunne*, 112 R.I. 775, 778–79, 316 A.2d 341, 343 (1974)). Nevertheless, if there is no ambiguity, then "there is no room for statutory construction and we must apply the statute as written." *State v. DiCicco*, 707 A.2d 251, 253 (R.I.1998) (quoting *In re Denisewich*, 643 A.2d 1194, 1197 (R.I.1994)).

This is such a case. Section 34–28–4(b), which states that "[t]he notice of intention shall be executed under oath," is expressly incorporated by reference into § 34–28–4(a), which in turn provides that unless all of its requirements are met, the lien "shall be void and wholly lost." Additionally, "[t]he word 'shall' usually connotes the imperative and contemplates the imposition of a duty, unless the particular context and plan require a contrary meaning." *Brown v. Amaral*, 460 A.2d 7, 10 (R.I.1983) (quoting *Carpenter v. Smith*, 79 R.I. 326, 334–35, 89 A.2d 168, 172–73 (1952)). We cannot conceive of any other meaning in the context of this statute. The circumstances here are analogous to those confronted by the Court in *Pezzuco*, 764 A.2d at 177–78, where this Court held that the plaintiffs' liens were wholly lost by the prospective

---

7. The requirement that the prospective lienor mail the notice of intention to the building inspector has since been repealed. *See* P.L. 1981, ch. 364, § 1.

lienor's failure to file the notice of *lis pendens* in the land evidence records within 120 days and its failure to send the notices by prepaid registered or certified mail. In that case, the prospective lienor's mistakes were unquestionably minor: the notice was filed after 123 days, and they were sent by regular mail. *See id.* at 176. Despite those menial transgressions, the Court held that the statute's requirements in this respect were unyielding, and "[w]hether or not a party is prejudiced by a late filing is irrelevant under the statute." *Id.* at 177. Whether the party's deviations are major or minor is similarly irrelevant if the controlling portion of the statute is unambiguous. *See id.* In our judgment, there is no ambiguity here; therefore, plaintiff may not rely on a rule of construction or an assertion that defendants suffered no prejudice to support a more forgiving reading of the statute, and its lien is lost.

We acknowledge that, under these facts, the application of our rules of construction ends in a harsh result. As Chief Justice Weisberger wrote in *Faraone,* 413 A.2d at 92, to prevent the ill of unjust enrichment, the mechanic's-lien statute creates a different dilemma by "placing the burden of expense upon one of two individuals who are generally blameless." Still, we are firm in our conclusion that the motion justice did not err when he dismissed the plaintiff's complaint for failure to comply with the statutory scheme. Simply put, an acknowledgment is not an oath.

## V

### Conclusion

The judgment of the Superior Court is affirmed. The papers in this case are remanded to the Superior Court.