December 8, 2017

**Supreme Court**

No. 2016-281-Appeal.
(PC 15-3752)

Michelle Hall, individually and as the    :
Natural Parent and Guardian of minor
Kanasia Hall

v.                :

Kim Hornby, R.N. et al.     :

NOTICE: This opinion is subject to formal revision before publication in the Rhode Island Reporter. Readers are requested to notify the Opinion Analyst, Supreme Court of Rhode Island, 250 Benefit Street, Providence, Rhode Island 02903, at Tel. 222-3258 of any typographical or other formal errors in order that corrections may be made before the opinion is published.

Michelle Hall, individually and as the    :
Natural Parent and Guardian of minor
Kanasia Hall

v.                  :

Kim Hornby, R.N. et al.       :

Present: Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ.

## O P I N I O N

**Justice Flaherty, for the Court.** The plaintiff, Michelle Hall, appeals from a judgment of the Superior Court granting the motion for summary judgment of the defendants, Colleen Belmonte and Kim Hornby. This case came before the Supreme Court pursuant to an order directing the parties to appear and show cause why the issues raised in this appeal should not summarily be decided. After considering the parties' written and oral arguments, and after reviewing the record, we conclude that cause has not been shown and that this case may be decided without further briefing or argument. The primary issue presented on appeal is straightforward: whether G.L. 1956 § 10-6-2—which provides, in pertinent part, "that a master and servant or principal and agent shall be considered a single tortfeasor"—means that the release of the master from liability also releases the servant. For the reasons set forth below, we hold that it does and therefore affirm the judgment of the Superior Court.

# I

## Facts and Travel

The salient facts in this case are not disputed.  In March 2015, plaintiff brought suit against Tavares Pediatric Center, Inc. on behalf of herself and her daughter, alleging that her daughter suffered serious injuries while in Tavares's care.  The complaint consisted of two counts: one alleging negligence, and a second alleging loss of consortium.  Shortly thereafter, plaintiff and Tavares settled and the litigation was dismissed.  As part of the settlement, plaintiff executed a Joint Tortfeasor Release, which released Tavares, its insurer, and others from claims arising from the medical treatment of plaintiff's daughter.  However, the terms of the Joint Tortfeasor Release specifically exempted "the agents, employees, representatives, and/or medical staff of Tavares * * *."  Indeed, plaintiff also "reserve[d] the right to make a claim against every other person, firm or corporation, including, without limitation, Colleen Belmonte[,] and * * * the right to make claim that Colleen Belmonte and not the Releasees are solely liable for alleged injuries, losses and damages."

It is undisputed that, while she was in the care of Tavares, plaintiff's daughter was treated by two nurses, Colleen Belmonte and Kim Hornby.  After settling with Tavares and executing the Joint Tortfeasor Release, plaintiff brought a second suit against nurses Belmonte and Hornby.  In a complaint nearly identical to the one that she had brought against Tavares, plaintiff again asserted two counts: one for negligence and a second for loss of consortium.  Following some limited discovery, Belmonte and Hornby moved for summary judgment.

In their motion, defendants argued that plaintiff's claims were barred because of the language set forth in § 10-6-2.[1]  Citing the language of the statute, defendants maintained that, because they and Tavares stood in a master-servant relationship, they "shall be considered a single tortfeasor."  It follows, defendants argued, that plaintiff's release of Tavares from liability required that they, too, were released from liability.  The trial justice agreed, finding that § 10-6-2 barred plaintiff's claims, and he therefore granted defendants' motion for summary judgment.  The plaintiff timely appealed to this Court.

## II

## Standard of Review

It is well settled that when we review the grant of a party's motion for summary judgment, we do so *de novo*.  *Van Hoesen v. Lloyd's of London*, 134 A.3d 178, 181 (R.I. 2016).  "In doing so, we 'examin[e] the case from the vantage point of the trial justice who passed on the motion for summary judgment, * * * view[ing] the evidence in the light most favorable to the nonmoving party, and if we conclude that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law[,] we will affirm the judgment.'"  *Id.* (quoting *Sullo v. Greenberg*, 68 A.3d 404, 406-07 (R.I. 2013)).  However, we are ever mindful that "[s]ummary judgment is a drastic remedy, and a motion for summary judgment should be

---

[1] In full, G.L. 1956 § 10-6-2 provides:

> "For the purposes of this chapter [the Uniform Contribution Among Tortfeasors Act], the term 'joint tortfeasors' means two (2) or more persons jointly or severally liable in tort for the same injury to person or property, whether or not judgment has been recovered against all or some of them; *provided, however, that a master and servant or principal and agent shall be considered a single tortfeasor*."  (Emphasis added.)

dealt with cautiously." *Faber v. McVay*, 155 A.3d 153, 156 (R.I. 2017) (quoting *Cruz v. DaimlerChrysler Motors Corp.*, 66 A.3d 446, 451 (R.I. 2013)).

Similarly, we also review questions of statutory interpretation *de novo*. *GSM Industrial, Inc. v. Grinnell Fire Protection Systems Co.*, 47 A.3d 264, 267-68 (R.I. 2012). "In matters of statutory interpretation our ultimate goal is to give effect to the purpose of the act as intended by the Legislature." *Id.* at 268 (quoting *D'Amico v. Johnston Partners*, 866 A.2d 1222, 1224 (R.I. 2005)). "In carrying out our duty as the final arbiter on questions of statutory construction, '[i]t is well settled that when the language of a statute is clear and unambiguous, this Court must interpret the statute literally and must give the words of the statute their plain and ordinary meanings.'" *Id.* (quoting *D'Amico*, 866 A.2d at 1224).

## III

### Discussion

Before this Court, plaintiff advances three arguments. The plaintiff first maintains that § 10-6-2 does not bar her claims against defendants. Second, plaintiff argues that an affidavit submitted by her attorney—averring that plaintiff's initial complaint against Tavares alleged that Tavares was independently liable for her daughter's injuries—raises a genuine issue of material fact, rendering summary judgment inappropriate. Finally, notwithstanding the language of § 10-6-2, plaintiff, relying on the language in the release, maintains that she preserved her claims against defendants.

At the outset, we note that this Court has previously declared that "[t]he language of § 10-6-2 is clear and unequivocal: 'a master and servant or principal and agent shall be considered a single tortfeasor.'" *DelSanto v. Hyundai Motor Finance Co.*, 882 A.2d 561, 566 (R.I. 2005) (quoting § 10-6-2). We are therefore bound to "give the words of the statute their

plain and ordinary meanings." *GSM Industrial, Inc.*, 47 A.3d at 268 (quoting *D'Amico*, 866 A.2d at 1224).

We turn our focus to § 10-6-2's concluding clause, the requirement "that a master and servant * * * shall be considered a single tortfeasor," and we can reach no other conclusion than that the release of one—either the master *or* the servant—results in the release of both. Here, pursuant to the pellucid language of § 10-6-2, Tavares, as master, and defendants, as servants, are a single tortfeasor. Consequently, plaintiff's release of Tavares resulted in the release of defendants. The simple, direct, and unambiguous language of the statute forecloses plaintiff's claims.

In an effort to limit the application of this clear statutory language, plaintiff argues that this Court has recognized a distinction as to the type of liability that is extinguished when an injured party releases a liable party. As plaintiff correctly points out, generally, when an injured party releases a tortfeasor-servant, it follows that the master is also released because the sole liability that flowed to the master is vicarious, imposed by a legal fiction based only on the servant's tortious conduct. *See Pridemore v. Napolitano*, 689 A.2d 1053, 1056 (R.I. 1997). But, plaintiff posits, the converse situation is present here. She contends that the release of a vicariously liable master has no effect on the liability of the tortfeasor-servant. In other words, plaintiff argues that there remains a liability that lingers with the tortfeasor-servant, a liability that is not extinguished by the release of the master. Because that lingering liability is actual and not derivative, plaintiff reasons that, under § 10-6-2, the release of the master does not result in the release of the servant.

Certainly, there are distinctions between the types of liability that may be present when fault is alleged against multiple parties. *See DelSanto*, 882 A.2d at 566 (discussing the

difference between vicarious liability and joint and several liability). Significantly, however, § 10-6-2 makes no such distinction. Its language is stark and unforgiving: Tavares and defendants "shall be considered a single tortfeasor." We are therefore constrained to apply its plain and ordinary meaning, irrespective of the type of liability at issue.[2]

Because we hold that § 10-6-2 forecloses the plaintiff's claims in this case, we need not address whether the affidavit submitted by the plaintiff's attorney raised a genuine issue of material fact. Our holding also disposes of the plaintiff's argument that she preserved her claims against the members of Tavares's medical staff pursuant to the Joint Tortfeasor Release. The language set forth in the Joint Tortfeasor Release purporting to preserve the plaintiff's claims against the defendants cannot override the statute's crystal-clear mandate that Tavares and the defendants, as master and servants, "shall be considered a single tortfeasor." *See Woonsocket Teachers' Guild, Local 951, AFT v. Woonsocket School Committee*, 770 A.2d 834, 838 (R.I. 2001) (stating that "applicable state * * * law trumps contrary contract provisions" (quoting *State v. Rhode Island Alliance of Social Services Employees, Local 580*, 747 A.2d 465, 469 (R.I. 2000)).

## IV

### Conclusion

For the reasons set forth in this opinion, we affirm the judgment of the Superior Court. The record shall be remanded to that court.

---

[2] The complaint against Tavares set forth no basis of independent liability against the master, such as negligent hiring or failure to properly train. Therefore, any argument based on any such theory is for another day. We also disagree with plaintiff's contention that this interpretation reaches an absurd result.

# STATE OF RHODE ISLAND AND PROVIDENCE PLANTATIONS

## SUPREME COURT – CLERK'S OFFICE

## OPINION COVER SHEET

| | |
|---|---|
| **Title of Case** | Michelle Hall, individually and as the Natural Parent and Guardian of minor Kanasia Hall v. Kim Hornby, R.N. et al. |
| **Case Number** | No. 2016-281-Appeal. (PC 15-3752) |
| **Date Opinion Filed** | December 8, 2017 |
| **Justices** | Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ. |
| **Written By** | Associate Justice Francis X. Flaherty |
| **Source of Appeal** | Providence County Superior Court |
| **Judicial Officer From Lower Court** | Associate Justice Richard A. Licht |
| **Attorney(s) on Appeal** | For Plaintiff: David Morowitz, Esq. |
| | For Defendants: Michael G. Sarli, Esq. Mark P. Dolan, Esq. |