Mary D'AMICO

v.

JOHNSTON PARTNERS et al.

No. 2004–3–Appeal.

Supreme Court of Rhode Island.

Jan. 31, 2005.

Lauren E. Jones, Esq., Providence, for Plaintiff.

Mark Nugent, Esq., Providence, for Defendant.

Present: WILLIAMS, C.J., GOLDBERG, FLAHERTY, SUTTELL, and ROBINSON, JJ.

## OPINION

FLAHERTY, Justice.

This matter came before this Court for oral argument on November 3, 2004, pursuant to an order directing the parties to appear and show cause why the issues raised by this appeal should not summarily be decided. After hearing the arguments of counsel and examining the memoranda filed by the parties, we are of the opinion that cause has not been shown and that the case should be decided at this time.

### Facts and Procedural History

This case calls upon the Court to determine whether a plaintiff seeking to initiate a direct action against a tortfeasor's liability insurance carrier under G.L.1956 § 27–7–2.4 is required to do so prior to the termination of the tortfeasor's bankruptcy case. It is our opinion that the plain language of the statute expresses no such requirement. Furthermore, our rules of construction and statutory interpretation do not permit us to impose such a condition in the law's application. Accordingly, we reverse the Superior Court's denial of the plaintiff's motion to substitute the defendant's liability insurance carrier.

The facts pertinent to this appeal are brief. The plaintiff, Mary D'Amico, filed a civil action against Johnston Partners in 1990. Her complaint alleged that Johnston Partners (Johnston) had wrongfully encroached upon and caused surface water to run onto her property during a construction project on Johnston's land, which abutted plaintiff's land. In 1992, D'Amico amended her complaint to add Garofalo & Associates, Inc. (Garofalo) as a defendant, alleging that negligence by that company in performing engineering design services for Johnston had proximately caused her damages.

On March 20, 1996, however, Garofalo filed a voluntary petition for Chapter 11 Reorganization in the United States Bankruptcy Court. Garofalo followed up with a notice of bankruptcy in the pending Superior Court action. On June 6, 1997, the Bankruptcy Court confirmed Garofalo's reorganization plan, and that court entered a final decree closing Garofalo's Chapter 11 case on November 14, 1997.

On August 1, 2003, Garofalo moved for summary judgment in D'Amico's action, contending that the approval of its reorganization plan discharged any and all debts incurred prior to June 6, 1997, and thereby extinguished D'Amico's claim against it.[1] D'Amico responded by filing a motion to substitute Evanston Insurance Co. (Evanston) for Garofalo pursuant to § 27–7–2.4. The court consolidated the motions for hearing on October 7, 2003, at which time the motion justice ruled in favor of Garofalo on both motions. The court based its decision upon an expansive interpretation of § 27–7–2.4:

"[T]he disposition of both motions * * * rises and or falls on the interpretation of

---

1. On October 1, 2003, Garofalo filed a supplemental memorandum in support of its motion for summary judgment, arguing that under Rhode Island law, a surveyor of land owes no duty of care to owners of property adjacent to the land on which the surveyor contracts to work. Because the motion justice granted Garofalo's motion on grounds averred in its first memorandum of law, we need not reach the negligence arguments to dispose of this appeal.

[§ 27–7–2.4] * * *. And that statute was interpreted by our Supreme Court as being broad and granting a broad entitlement to a claimant to pursue the insurer in the event that the insured files for bankruptcy. However, it does not assume that the claimant can sort of sit on its rights and lose the claim in the Bankruptcy Court, and, after the conclusion of the entire bankruptcy proceeding, thereafter, [attempt] to join the insurer. * * * In this case, I find that by reason of the passage of time and the confirmation of a plan, that this plaintiff lost its claim in the bankruptcy court and therefore cannot partake of the provisions of 27–7–2.4, as a person having a claim, and therefore cannot proceed against its insurer in this case."

The plaintiff filed a timely notice of appeal, contesting only the denial of its motion to substitute.

### Standard of Review

■ Questions of statutory interpretation are reviewed *de novo* by this Court. *Webster v. Perrotta,* 774 A.2d 68, 75 (R.I. 2001). In carrying out our duty as the final arbiter on questions of statutory construction, "[i]t is well settled that when the language of a statute is clear and unambiguous, this Court must interpret the statute literally and must give the words of the statute their plain and ordinary meanings." *Accent Store Design, Inc. v. Marathon House, Inc.,* 674 A.2d 1223, 1226 (R.I. 1996). "This is particularly true where the Legislature has not defined or qualified the words used within the statute." *Markham v. Allstate Insurance Co.,* 116 R.I. 152, 156, 352 A.2d 651, 654 (1976). "In

matters of statutory interpretation our ultimate goal is to give effect to the purpose of the act as intended by the Legislature." *Webster,* 774 A.2d at 75.

### Analysis and Discussion

■ Before delving into an examination of § 27–7–2.4, we will first address Evanston's argument that plaintiff's appeal is moot. We previously have held that "a case is moot 'if the original complaint raised a justiciable controversy, but events occurring after the filing have deprived the litigant of a continuing stake in the controversy.'" *Foster–Glocester Regional School Committee v. Board of Review,* 854 A.2d 1008, 1013 (R.I.2004) (quoting *In re New England Gas Co.,* 842 A.2d 545, 553 (R.I.2004)). The defendant argues that plaintiff's failure to appeal the motion justice's decision on Garofalo's motion for summary judgment effectively renders this Court's decision on its motion to substitute moot because the claim against Garofalo no longer exists as a matter of law. This argument misses the mark. It is apparent in this case that the motion justice granted summary judgment in favor of Garofalo on the grounds that D'Amico's claim had been extinguished at the conclusion of Garofalo's bankruptcy proceedings. These are the same grounds upon which the court denied D'Amico's motion to substitute. Because plaintiff seeks review on its motion to substitute Evanston for Garofalo, however, our decision consequently goes to the heart of the summary disposition and addresses the same issues central to it. Therefore, D'Amico retains a continuing stake in this controversy.[2]

---

**2.** Had the motion justice granted defendant's motion for summary judgment and found that Garofalo did not owe D'Amico a duty of care in this case, plaintiff's appeal to this Court might then be rendered moot, considering that the issue of Garofalo's actual liability would be foreclosed. Here, however, the motion justice summarily disposed of both motions on the grounds that Garofalo's discharge in bankruptcy eliminated any claim that plaintiff might have against the company. Therefore, plaintiff's appeal allows us to ad-

Turning to the merits of the appeal, we note that § 27–7–2.4 provides:

"Any person, having a claim because of damages of any kind caused by the tort of any other person, may file a complaint directly against the liability insurer of the alleged tortfeasor seeking compensation by way of a judgment for money damages whenever the alleged tortfeasor files for bankruptcy, involving a chapter 7 liquidation, a chapter 11 reorganization for the benefit of creditors or a chapter 13 wage earner plan, provided that the complaining party shall not recover an amount in excess of the insurance coverage available for the tort complained of."

This Court previously has concluded that § 27–7–2.4 *"clearly and unambiguously* allows the injured party to substitute the tort-feasor's liability insurer as defendant after the tort-feasor files for bankruptcy." *Giroux v. Purington Building Systems, Inc.*, 670 A.2d 1227, 1229 (R.I.1996) (emphasis added). In *Giroux,* the plaintiff sustained injury after being struck by a section of prefabricated roof decking while working as an employee of the defendant subcontractor. Giroux initiated suit against both the subcontractor and the manufacturer of the roof components, alleging that their negligence had proximately caused his injuries. After the

manufacturer received protection under Chapter 11 of the Bankruptcy Code, Giroux moved to substitute the manufacturer's insurer under § 27–7–2.4. In response, the insurer argued that relief from the automatic stay imposed by the Bankruptcy Court pursuant to 11 U.S.C. § 362 was a condition precedent to substitution. The insurer further asserted that substitution under the statute was both permissive and discretionary, and that the Superior Court therefore had discretion to protect the insurer from substantial prejudice caused by its substitution as defendant. Reiterating our standard of review that "where the language of [a] statute is clear and unambiguous and 'expresses a plain and sensible meaning, the meaning so expressed will be conclusively presumed to be the one intended by the Legislature[,]' " *Giroux,* 670 A.2d at 1229 (quoting *Markham,* 116 R.I. at 156, 352 A.2d at 653), we determined that § 27–7–2.4 did not allow additional conditions to be imposed for an injured party to substitute an insurer as a defendant. Accordingly, we held that "there is no provision under the clear and direct language of § 27–7–2.4 that would mandate this step in the application of the statute." *Giroux,* 670 A.2d at 1229.

This Court likewise has refrained from an overly inferential reading of § 27–7–2, a similar direct action statute.[3] First, in

---

dress the issues central to the summary judgment.

3. General Laws 1956 § 27–7–2 provides:

"An injured party, or, in the event of that party's death, the party entitled to sue for that death, in his or her suit against the insured, shall not join the insurer as a defendant. If the officer serving any process against the insured shall return that process *'non est inventus '*, or where before suit has been brought and probate proceedings have not been initiated the insured has died, or where a suit is pending against an insured in his or her own name and the insured died prior to judgment, or where a nonresi-

dent had been involved in an automobile accident in Rhode Island as an operator or owner and died before suit has been brought, the injured party, and, in the event of that party's death, the party entitled to sue for that death, may proceed directly against the insurer. The injured party, or, in the event of that party's death, the party entitled to sue for that death, after having obtained judgment against the insured alone, may proceed on that judgment in a separate action against the insurer; provided, the payment in whole or in part of the liability by either the insured or the insurer shall, to the extent of the payment, be a bar

*Maczuga v. American Universal Insurance Co.,* 92 R.I. 76, 166 A.2d 227 (1960), we concluded that the clear language of § 27–7–2 allowed an insurer to be substituted based upon a *non est inventus* return of process when the plaintiff received knowledge of the tortfeasor's whereabouts after the direct action had begun. In that case, after the complaint issued against the insured tortfeasor was returned *non est inventus* on September 11, 1959, plaintiff served defendant's liability insurer pursuant to the statute on November 10, 1959. Thereafter, in March 1960, defendant's counsel informed plaintiff's counsel of his client's whereabouts. At trial, the substituted insurer argued that such knowledge, acquired subsequent to the commencement of the action against it, constituted valid grounds for dismissal of plaintiff's direct action. Affirming the Superior Court, we rejected defendant's argument and held that the clear and unambiguous language of § 27–7–2 did not "reasonably submit" to the imposition of the condition urged by the insurer. *Maczuga,* 92 R.I. at 81, 166 A.2d at 230.

Similarly, in *Gnys v. Amica Mutual Insurance Co.,* 121 R.I. 131, 396 A.2d 107 (1979), we reaffirmed the principle that § 27–7–2 unconditionally authorizes suit against an insurer upon a *non est inventus* return. In *Gnys,* plaintiff was injured in a motor vehicle accident with a car owned by Warren Salley and operated by Warren's brother, David. The plaintiff instituted suit and successfully served a copy of the complaint and summons upon Warren, but the sheriff was unable to locate David and accordingly executed a *non est inventus* return so far as David was concerned. The plaintiff thereafter filed a direct action against Amica Insurance Company, which insured the vehicle. Amica moved for summary judgment, and the Superior Court found that Amica's general appearance on behalf of both David and Warren was the "functional equivalent of service" on David, thereby rendering the *non est inventus* return ineffective. On appeal, we determined that the filing of the answer and general appearance on behalf of David subsequent to Gnys' commencement of his direct action against Amica could not nullify the clear language of the statute, which in "simple and direct terms authorizes suit against an insurer once the 'officer serving any process against the insured shall return said process *"non est inventus."* '" *Gnys,* 121 R.I. at 135, 396 A.2d at 109 (quoting § 27–7–2) (emphasis added).[4]

Also, in *Markham,* we held that plaintiff's motion to substitute the deceased tortfeasor's insurer as defendant under § 27–7–2 was not inappropriate merely because there was a personal representative of the deceased's estate available as a defendant. In that case, the plaintiff sued the defendant for personal injuries suf-

to recovery against the other of the amount paid." (Emphasis added.)

4. We are mindful that this Court recently has modified the *Gnys* holding. In *Shayer v. Bohan,* 708 A.2d 158 (R.I.1998), on facts similar to those presented in *Gnys,* we held that since the plaintiff had served process upon the automobile owner, plaintiff's direct action against the driver's insurer under § 27–7–2 would violate the purpose of the statute, which we concluded was "to provide a remedy to the injured party when service against the insured cannot be obtained." *Shayer,* 708

A.2d at 164. Because the owner had been served, we reasoned, the insurance proceeds were available as a source of recovery for plaintiff. We therefore determined that while § 27–7–2 allows for a direct action against an insurer, it does "not enlarge the liability of the insurer beyond the limits stated in the policy." *Id.* (quoting *Barber v. Canela,* 570 A.2d 670, 671 (R.I.1990)). Nevertheless, we believe that our holding in *Gnys,* particularly that language regarding this Court's consistent interpretation of direct action statutes, is entitled to significant weight herein.

fered in an automobile accident. The defendant subsequently died, however, and his widow moved to be substituted as a party defendant. The plaintiffs, on the other hand, moved to substitute the defendant's insurer, Allstate Insurance Company, pursuant to § 27–7–2. The Superior Court granted plaintiff's motion, and on certiorari, Allstate argued that § 27–7–2 allowed substitution of an insurer only when the insured has died during suit and when no personal representative of his estate is available against whom the plaintiff could proceed. Rejecting the insurer's contention, we found nothing in the "crystal clear and unambiguous language of the statute" from which to infer Allstate's proposed interpretation. *Markham,* 116 R.I. at 156, 352 A.2d at 654. Accordingly, we held that § 27–7–2 attached no conditions on plaintiff's right to proceed against an insurer where the insured defendant has died. *See also Deignan v. Hartford Accident Indemnity Co.,* 116 R.I. 498, 500, 358 A.2d 675, 676 (1976) (reiterating our holding in *Markham* on identical facts).

■ In this case, defendant asks us to attach a conditional limitation upon § 27–7–2.4 whereby a plaintiff may only substitute an alleged tortfeasor's liability insurer as a defendant in a civil action against the tortfeasor prior to the conclusion of the tortfeasor's bankruptcy proceedings and subsequent approval of its Chapter 11 reorganization plan. Specifically, defendant argues that because the conclusion of Garofalo's bankruptcy proceedings extinguished D'Amico's tort claim against Garofalo, D'Amico no longer may assert a § 27–7–2.4 action against Evanston derivative of that original claim. To support its argument, defendant cites to § 1141 of title 11 of the United States Bankruptcy Code, which provides, in pertinent part:

"(a) Except as provided in subsections (d)(2) and (d)(3) of this section, the provisions of a confirmed [reorganization] plan bind the debtor, any entity issuing securities under the plan, any entity acquiring property under the plan, and any creditor * * * whether or not the claim or interest of such creditor * * * is impaired under the plan and whether or not such creditor * * * has accepted the plan.

"* * *

"(c) Except as provided in subsections (d)(2) and (d)(3) of this section and except as otherwise provided in the [reorganization] plan or in the order confirming the [reorganization] plan, after confirmation of a [reorganization] plan, the property dealt with by the plan is free and clear of all claims and interests of creditors * * *."

Although we have not had occasion to address this precise question, this Court previously has held that substitution of an insurer under § 27–7–2.4 does not frustrate the goals of federal bankruptcy law so long as the substitution works no harm to other creditors entitled to proceeds from the insured's policy. *Giroux,* 670 A.2d at 1231. As in *Giroux,* there is no evidence in the record of this case indicating the existence of any other claimants or creditors to Garofalo's policy with Evanston. Moreover, Evanston has not satisfied us that it will be unfairly prejudiced by its substitution as defendant in this case. In fact, at oral argument, Evanston's counsel not only admitted that the carrier has had knowledge of the suit against its insured since its filing, but also that it has provided a defense to Garofalo throughout the litigation.[5]

---

5. Evanston's involvement in this case throughout the litigation also contradicts its

contention that the timeliness of D'Amico's direct action against it violates the equitable

Furthermore, the Bankruptcy Code itself categorically provides that the "discharge of a debt of the debtor does not affect the liability of any other entity on, or the property of any other entity for, such debt." 11 U.S.C. § 524(e).[6] Thus, "[i]t is generally agreed that the debtor's discharge does not affect the liability of the debtor's insurer for damages caused by the debtor and that the creditor may seek to recover from the insurer." 4 Lawrence P. King, *Collier on Bankruptcy* ¶ 524.05 & n. 22 at 524–26 (15th rev.ed. 2000) (citing *Matter of Edgeworth*, 993 F.2d 51, 53 (5th Cir.1993) ("A discharge in bankruptcy does not extinguish the debt itself, but merely releases the debtor from personal liability for the debt"); and *Green v. Welsh*, 956 F.2d 30 (2nd Cir.1992); *Owaski v. Jet Florida Systems, Inc.*, 883 F.2d 970 (11th Cir.1989)). Considered in tandem with 11 U.S.C. § 1141 and 11 U.S.C. § 524(e), it is apparent that post-discharge substitution under § 27–7–2.4 neither frustrates nor contravenes the Bankruptcy Code. Although the code's purpose is to protect individual debtors from continuing

liability upon discharge, § 27–7–2.4 merely provides recourse to injured plaintiffs through the debtor's liability insurance coverage policy. Thus, the statute safeguards the rights of the aggrieved victim without inhibiting, advancing, or even implicating the protectionist interests embodied by the Bankruptcy Code.

■ Considering our opinions in *Giroux, Maczuga, Gnys*, and *Markham*, and with due regard for the strict standard of review that we employ when considering enactments of the General Assembly, we hold that a party seeking substitution of an insurer under § 27–7–2.4 is not statutorily obligated to assert its claim against the insurer prior to the confirmation of the debtor's Chapter 11 reorganization plan and its contemporaneous discharge. The language of § 27–7–2.4 is clear and unambiguous, and we find nothing in the statute from which we may permissibly adopt the view proffered by Evanston. To hold otherwise would require this Court to invade the province of the Legislature by adding

---

doctrine of laches. Accordingly, we lend little credence to Evanston's arguments on that point.

**6.** Section 524 of title 11 of the United States Code provides, in pertinent part:

"(a) A discharge in a case under this title—

(1) voids any judgment at any time obtained, to the extent that such judgment is a determination of the personal liability of the debtor with respect to any debt discharged under section 727, 944, 1141, 1228, or 1328 of this title, whether or not discharge of such debt is waived;

(2) operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor, whether or not discharge of such debt is waived; and

(3) operates as an injunction against the commencement or continuation of an ac-

tion, the employment of process, or an act, to collect or recover from, or offset against, property of the debtor of the kind specified in section 541(a)(2) of this title that is acquired after the commencement of the case, on account of any allowable community claim, except a community claim that is excepted from discharge under section 523, 1228(a)(1), or 1328(a)(1) of this title, or that would be so excepted, determined in accordance with the provisions of sections 523(c) and 523(d) of this title, in a case concerning the debtor's spouse commenced on the date of the filing of the petition in the case concerning the debtor, whether or not discharge of the debt based on such community claim is waived.

"* * *

"(e) Except as provided in subsection (a)(3) of this section, discharge of a debt of the debtor does not affect the liability *of any other entity* on, or the property of any other entity for, such debt." (Emphasis added.)

a condition that the General Assembly did not include. Such a holding also would be totally inconsistent with our previous decisions on this and similar statutes.

Moreover, our strict standard of review obliges us to give effect to the legislative purpose behind § 27–7–2.4, which is to give an aggrieved and injured party the right to proceed directly against an insurer in those circumstances in which the tortfeasor has sought protection under the applicable provisions of the United States Bankruptcy Code. Although we are concerned in this case about D'Amico's failure to assert her rights under § 27–7–2.4 until almost seven years after the issuance of the final decree closing Garofalo's Chapter 11 case, there is no basis from which to conclude that her delay has frustrated the specific purpose of the statute. We are mindful that it is the responsibility of the General Assembly, not the judiciary, to amend the law in accordance with Evanston's proposed interpretation should it see fit.

### Conclusion

We conclude that the motion justice erred in denying the plaintiff's motion to substitute Evanston for Garofalo. For the reasons stated herein, we reverse the judgment of the Superior Court. The record shall be remanded to the Superior Court.

GOLDBERG, Justice, with whom Justice SUTTELL joins, dissenting.

I respectfully dissent from the decision of the majority and do so for two reasons. First, I would remand this case to the trial justice with directions to decide the motion for summary judgment based on the defendant's assertion that, in performing design and engineering services for Johnston Partners, it owed no duty of care to the plaintiff, an adjacent property owner.

That issue was before the trial justice and he should have addressed it. In light of today's decision, the defendant's motion for summary judgment based on the question of whether a duty of care was owed to the plaintiff by Garofalo will be the next order of business for the trial court, the resolution of which may very well find its way back here.

In a negligence action, whether a duty is owed a plaintiff by the alleged tortfeasor is a question of law. *Volpe v. Fleet National Bank*, 710 A.2d 661, 663 (R.I.1998) (citing *Hennessey v. Pyne*, 694 A.2d 691, 697 (R.I. 1997)). In this case, the issue of duty does not depend upon the resolution of any factual dispute. Whether a duty of care runs from a defendant to a party is for the court to decide in the first instance. *Id.* (citing *Ferreira v. Strack*, 636 A.2d 682, 685 (R.I.1994)). It is undeniable that plaintiff was not a party to the contract between Garofalo and Johnston Partners, the named defendant, which, apparently, is judgment-proof. Garofalo's negligence in this case wholly depends upon whether, as an engineer doing work for a landowner, Garofalo owed a duty of care to an adjacent landowner. *See Carroll v. Yeaw*, 850 A.2d 90, 94 (R.I.2004) (no duty of care owed to third-party users of stairway by contractor whose name appeared on building permit). Accordingly, I would remand the case for a determination of the crucial issue of whether Garofalo owed a duty of care to plaintiff under the facts in this case.

My second reason for parting company with the majority is my conviction that the result in this case is not a substitution of parties but a resurrection of a lifeless claim. As a result of its discharge in bankruptcy, Garofalo's liability was completely extinguished and, importantly, this discharge arose before plaintiff sought to substitute the carrier as the party defen-

dant. Because the insured could not be found liable under any conceivable set of circumstances, I am of the opinion that the insurer's liability also was terminated and that its responsibility to its insured was concluded.

I respectfully disagree with the conclusion of the majority that requiring a plaintiff to seek to substitute the insurer of a bankrupt tortfeasor before the tortfeasor receives a discharge in bankruptcy is an impermissible condition on the operation of the statute forbidden by our rules of statutory construction. The requirement that there be a legally cognizable claim against the tortfeasor for the substitution to be allowed is no more an impermissible additional condition to the operation of G.L. 1956 § 27–7–2.4 than is the requirement that a litigant comply with the applicable statute of limitations. Failure to file a timely complaint acts as a total bar to suit. *Guay v. Dolan,* 685 A.2d 269, 271 (R.I. 1996). A party cannot be held liable for a claim made after the expiration of the applicable statute of limitations.

Furthermore, because Garofalo's liability has been extinguished by a discharge from the bankruptcy court and the unappealed summary judgment granted in Superior Court, Garofalo has no duty to cooperate with Evanston in the defense of the claim. This fact works to Evanston's disadvantage, and Evanston may be prejudiced further by its inability to collect the deductible amounts in the policy or to apply that amount toward any potential judgment.

Finally, the language of § 27–7–2.4 also persuades me that plaintiff forfeited her right to substitute Evanston by failing to assert a claim in the bankruptcy proceeding and waiting until Garofalo received a discharge before attempting to substitute the insurer. Although the statute does not contain a time limitation, it uses the present tense in describing who may bring a direct action against an insurer as "[a]ny person, having a claim because of damages * * * may file a complaint directly against the liability insurer of the alleged tortfeasor." *Id.* The use of the present tense makes the timeliness of a suit, whether by direct action (within the statute of limitations), or by substitution (before the discharge in bankruptcy), an implicit condition precedent. This construction does no violence to the statute and furthers its obvious purpose that injured parties have recourse against a bankrupt tortfeasor's insurance carrier and that insurers who have been paid premiums ought not to be relieved from their duty to defend. Consequently, I dissent.