May 9, 2022

**Supreme Court**

No. 2019-420-Appeal.
(PC 15-1646)

V. George Mitola et al.            :

v.                      :

Providence Public Buildings Authority.  :

NOTICE: This opinion is subject to formal revision before publication in the Rhode Island Reporter. Readers are requested to notify the Opinion Analyst, Supreme Court of Rhode Island, 250 Benefit Street, Providence, Rhode Island 02903, at Telephone (401) 222-3258 or Email opinionanalyst@courts.ri.gov, of any typographical or other formal errors in order that corrections may be made before the opinion is published.

V. George Mitola et al.  :

v.  :

Providence Public Buildings Authority.  :

Present: Suttell, C.J., Goldberg, Robinson, Lynch Prata, and Long, JJ.

## O P I N I O N

**Chief Justice Suttell, for the Court.**  On March 9, 2012, the defendant, Providence Public Buildings Authority (defendant or the authority), acquired the development rights of approximately sixty-seven acres of land in North Scituate, Rhode Island, owned by the plaintiffs, V. George Mitola and Carol A. Mitola (plaintiffs).  The plaintiffs filed a petition for assessment of damages on April 22, 2015, and a petition to compel purchase in fee on December 7, 2015.  After the petition to compel purchase in fee was denied by the trial justice, the issue of damages proceeded to a jury-waived trial.  The plaintiffs now appeal from the final judgment awarding them $492,000 plus interest in the amount of $6,309.20.  They ascribe reversible error to the Superior Court's (1) denial of their petition to compel purchase in fee; (2) denial of their motion to reconsider the court's decision and order denying the plaintiffs' petition to compel purchase in fee; and (3) acceptance

- 1 -

of the valuation of the property offered by the defendant's appraiser, and thereby the court's rejection of the comparable sales method of valuation as calculated by the plaintiffs' appraiser.

For the reasons stated herein, we vacate the judgment and remand this case to the Superior Court with directions that the court enter an order compelling the taking in fee and for the valuation of a fee-simple interest in the sixty-seven acres of land.

## I

## Facts and Travel

V. George Mitola first testified at trial that, in May 2002, he purchased approximately sixty-seven acres of undeveloped land in North Scituate, Rhode Island, for the sum of $325,000. The land is identified as Lot 1 on Tax Assessor's Plat 38. Mr. Mitola stated that his intention—both when he purchased the property in 2002 and after the construction of the family home was completed in 2006—was to subdivide the property, whereby he would keep approximately four of the eight proposed lots for his family.

The events leading to the case at bar began in 2005. That year, defendant sought to acquire the development rights of the property owned by plaintiffs. The defendant retained an appraiser and notified plaintiffs of the appointment of an appraiser by a letter dated May 19, 2006. The defendant, pursuant to G.L. 1956 § 45-50-13(a)(6), retained the appraiser to determine the fair market value of the

development rights to the property. The May 19, 2006 letter also requested that plaintiffs obtain an appraisal. An appraisal was completed by defendant; however, plaintiffs did not engage an appraiser. On August 21, 2006, defendant filed a complaint in Superior Court, in PC 06-4391, asking the court to compel plaintiffs to appoint an appraiser. The plaintiffs answered the petition and pled a counterclaim alleging constitutional violations, which the court considered on summary judgment and subsequently denied, finding that they had stated "no colorable basis for their claim that § 45-50-13 is unconstitutional."

Thereafter, defendant filed a petition in a separate action, PM 12-1293, requesting that the Superior Court determine the amount of money that would satisfy the claims of all interested persons for the development rights to the property. On March 9, 2012, the Superior Court determined that the sum of $775,000 was sufficient to satisfy the claims to the development rights; and, on that same day, defendant deposited that amount into the Registry of the Superior Court. The defendant later sought to reduce the amount in the registry from $775,000 to $485,000. The court granted defendant's petition and reduced the amount required to be held in the registry to $485,000. In the order reducing the amount, the court also provided that any person claiming an interest in the development rights had three months after receipt of personal service of the order to file a petition for the assessment of damages, in accordance with § 45-50-13(e).

Following the entry of the order, Mr. Mitola filed a motion to vacate and/or modify the order reducing the amount required to be held in the registry. He argued that he did not receive notice of the motion to reduce the deposit held in the registry; he also filed affidavits in support of his motion. The defendant then filed a motion for summary judgment on its petition. An assented-to order was entered on May 15, 2014, which gave plaintiffs forty-five days "in which to file a petition * * * for an assessment of damages[.]"

**Petition to Compel Purchase in Fee**

On April 22, 2015, plaintiffs filed the instant action in the Superior Court as a "Petition for Assessment of Damages[.]" The plaintiffs' petition, among other things, (1) stated that plaintiffs did "not agree with the amount of the offer by [defendant] as just compensation for the taking of said development rights"; (2) sought declarations that the removal of sand and gravel and the installation of a solar farm were not development rights subject to defendant's condemnation; but, if they were a part of the development rights, the values of such were to be "added to the amount of the value of the [l]ot as an additional part of the amount which constitutes just compensation"; and (3) asserted that the taking of development rights instead of taking the property in "fee simple" was unconstitutional. On October 19, 2015, the trial justice entered a scheduling order setting a trial date of December 7, 2015.

On December 7, 2015, Mr. Mitola filed a petition in the present case to compel purchase in fee pursuant to § 45-50-13.[1]  The defendant filed an objection to the petition.  A hearing was held on the petition to compel purchase in fee on January 19, 2016.  At the hearing, Mr. Mitola, through counsel, argued that there was no time limit for him to elect to have defendant purchase the property in fee simple under § 45-50-13(a)(5).  The defendant disagreed, first highlighting that "this is a question of first impression about whether or not they're estopped or laches will prevent them from making a request to have the authority take the fee."  The defendant argued that the petition to compel purchase in fee was untimely because it was filed more than three years after defendant effectuated a taking of the development rights of the property by making a deposit into the Superior Court registry.  The defendant further contended that it would be prejudiced by additional interest being assessed on amounts over the amount deposited into the Superior Court registry, namely interest on the value of the house located on the property.

The trial justice issued a written decision on March 1, 2016.  Citing to § 45-50-13(a)(5), she held that plaintiffs' obligation to notify the authority of their request for the property to be purchased in fee began when defendant "commenced

---

[1] A review of the petition shows that only Mr. Mitola was named as a plaintiff on the petition.  It is unclear why only he filed the petition—both plaintiffs continued to be parties in the case and both are parties on appeal.

condemnation proceedings by filing a [m]iscellaneous [p]etition on May 19, 2006."[2] Further, she held that plaintiffs' opportunity to require defendant to acquire the property in fee ended when defendant deposited funds in the registry of the court and title to the development rights passed to defendant on March 9, 2012. The trial justice also found that plaintiffs' delay in filing the petition to compel purchase in fee prejudiced defendant and held that the equitable defense of laches applied. Because the value of the property was not the same at that time, in 2016, as it was when the condemnation was initiated in 2006, the trial justice further found that new appraisals would be needed. Additionally, the trial justice stated that defendant would be prejudiced by having to prepare for a new theory of damages on the eve of trial.

In an order entered on April 4, 2016, the trial justice denied Mr. Mitola's petition to compel purchase in fee. The plaintiffs thereafter filed a motion to reconsider on May 2, 2016, and defendant filed an objection to that motion on May 9, 2016. On May 12, 2016, a hearing was held before the trial justice on plaintiffs' motion to reconsider, at which plaintiffs introduced a letter likely issued on November 10, 2012, to show that plaintiffs' previous legal counsel had at that time

---

[2] The miscellaneous petition referenced by the trial justice was in fact a complaint filed on August 21, 2006, not on May 19, 2006, as stated by the trial justice. This discrepancy is of no consequence to our analysis.

proposed transferring the property in fee simple as a possible resolution.[3] The trial justice denied plaintiffs' motion to reconsider in a bench decision rendered that same day. In her decision, the trial justice noted that (1) there was no change in circumstances that would warrant granting the motion; (2) the letter should have been known by plaintiffs; and (3) plaintiffs failed to notify the Superior Court in 2012 of the election to have defendant purchase the property in fee simple.

## Assessment of Damages

On April 3, 2018, a bench trial on the assessment of damages in the present case began. The parties first noted that they agreed that "the highest and best use [of the property] is an eight-lot subdivision[.]" At trial, Mr. Mitola testified that (1) he purchased the property on May 29, 2002, for $325,000; (2) he wanted to subdivide and develop the property while keeping some of the lots for his daughters and family members; (3) road and other engineering work took place on the property from 2004 through 2006; (4) during the course of development, he was contacted by a representative of the Providence Water Supply Board, who stated that the Providence Water Supply Board could "either purchase [the property] or take [it] through eminent domain."

---

[3] The letter is dated November 10, 2011. However, defendant noted that, because the letter references the 2012 case, the year 2011 must have been an error, with 2012 likely being the correct year the letter was sent from plaintiffs' counsel to the authority's counsel.

Next, Jeffrey Hanson, president of Millstone Engineering and project manager of the engineering work completed on the property in 2005 and 2006, testified. Hanson testified that "[a] portion of the subdivision was started under construction" at that time, and the cost of his engineering work on the property was $277,834.33.[4] Hanson stated that he was additionally "asked to develop a cost to complete the roadway[,]" which he stated was approximately "925 linear feet" and totaled $172,227.87.[5]   Moreover, he testified that completion of the driveway for the residence would cost $92,344.93.

After Hanson concluded his testimony, the parties informed the court that they had reached a settlement; however, the settlement was never finalized and enforced. According to Mr. Mitola, the settlement efforts failed because there was a misunderstanding concerning the acreage, and he had difficulty hearing what his attorney was saying when he agreed to the settlement in open court on April 4, 2018. As a result of the failed settlement, the bench trial resumed in October 2018.

When the trial recommenced on October 1, 2018, E. Jenny K. Flanagan, vice president of Keystone Consulting Group and a land appraiser for plaintiffs, testified

---

[4] On cross-examination, Hanson acknowledged that, when seeking solely to calculate the cost of the 750 linear feet of the roadway that had been constructed, $18,012.17 should be deducted from the $277,834.33 total, and therefore the cost of the completed construction was $259,822.16.  The $18,012.17 figure reflected the costs associated with the construction of a retention basin on the property.

[5] Hanson originally stated that the roadway was 875 linear feet; however, on cross-examination he conceded that the correct number was 925 linear feet.

that she was tasked with "provid[ing] an opinion of value of the property in its condition before [the] condemnation order was filed and to provide an opinion * * * once that condemnation order was filed." She confirmed that it was her understanding that the operative date of the condemnation was March 9, 2012. Flanagan testified that, in valuing the property, she utilized "the sales comparison approach and the land development discounted cash flow analysis, and reconciled those two approaches based on the quality, quantity and reliability of the data that [she] analyzed."

Flanagan testified that, prior to the taking, the market value of the property was $1 million. In arriving at that figure, Flanagan testified, she undertook the following steps. First, she determined that the highest and best use for the property was to subdivide the property into eight lots. To calculate the retail value of each house lot, she looked at comparable "individual lot sales as well as sales in other subdivisions in Scituate[,]" and ultimately arrived at a figure of $165,000.

Flanagan next valued plaintiffs' home at $547,000 by comparing the existing dwelling "to other single-family residences in Scituate that had sold in the two years before the date of value[.]" For the remaining acres of land suitable for development as seven prospective house lots, she valued each lot at $70,000, for a total of $490,000. She then assessed the acres of surplus residential land on the property, by comparing sales of undevelopable properties in Scituate, and concluded that the

surplus land was valued at $43,000. Flanagan arrived at a total of $1,075,000 by adding the value of plaintiffs' home, the excess subdividable land, and the value of surplus accessory land as well as subtracting the amount necessary to subdivide the surplus land, which was estimated at $4,000, and rounding "the value by the sales comparison approach[.]" Comparing that total to the value determined by the discounted cash flow analysis of $785,000, she reconciled to a value of $1 million.

To determine the value of the property after the March 9, 2012 taking, Flanagan once again used the sales comparison approach and looked at sales of "undevelopable land that was purchased for accessory or recreation purposes." For the property's post-condemnation value, she testified that the value of plaintiffs' home remained at $547,000 and "the surplus undevelopable land" had a value of $63,000, thus totaling $610,000. Flanagan stated that she calculated the value of the development rights by taking the "difference between the before value and the after value." Therefore, the value of the condemned development rights was $610,000 (the after value) subtracted from $1 million (the before value), which equaled $390,000.

Flanagan then considered the site improvement and engineering costs. She stated that the "super-adequate road costs" totaled $283,561.[6] Flanagan then

_____

[6] Based on the testimony provided at trial, it is this Court's understanding that there is no debate that the term "super-adequate" costs referred to costs incurred by plaintiffs in constructing their driveway, drainage, and other road improvements that

adjusted the value to reflect what the costs of "the probable road or driveway would have been if no development had occurred[,]" and the "net contributory" super-adequate road costs were valued at $187,060. Additional engineering and approval costs were valued at $120,000; and, when further calculated to reflect what plaintiffs would have incurred anyway, Flanagan valued the costs at $108,000. Flanagan rounded the development costs to $295,000. She added the development costs and the development rights figure to reach a total value of $685,000 for the property's development rights. When asked to compare her report to defendant's expert's report, Flanagan testified that her "primary area of disagreement" with his report was that he did not take into consideration "the super-adequate site improvements to the site that were made in anticipation of the subdivision that could never be done with the condemnation."

Steven M. Clarke, a licensed engineer and an expert who testified on behalf of defendant, provided "an analysis of what the costs would be for infrastructure on [the] eight-lot subdivision[.]" Clarke first testified that he felt that Hanson's analysis excluded certain items, including but not limited to "the fire protection tank [and] the detention basin[.]" Clarke testified that the total infrastructure costs were $302,006.25—"a couple of thousand dollars" higher than Hanson's analysis.

they would not have incurred if they had known that they would have been prohibited from subdividing the property.

- 11 -

Peter M. Scotti, defendant's real estate appraiser, testified next at trial. He confirmed that he was "asked to do an appraisal to determine * * * the subject market value for March 9th, 2012, on a development analysis[.]" Scotti testified that he used the sales comparison approach, finding some sales of lots in Scituate and compared those to the property, while making "adjustments for location, size, general appeal, et cetera, and came to a determination of individual lot value on the average." He employed a similar approach when valuing plaintiffs' home and the lot upon which the house was situated, assigning a $675,000 value to the house. For the seven-lot subdivision, Scotti used the developer's approach for his valuation. Scotti testified that he did not employ the sales comparison approach because there are too many variables between undeveloped properties.

Scotti further testified that, prior to the condemnation, he valued the undeveloped seven lots at $396,000. According to Scotti, the total value of the property before condemnation was $1,071,000. He testified that, for his valuation of the seven undeveloped lots after the condemnation, he looked at three comparable sales of undevelopable land. Scotti opined that, for post-condemnation, the seven lots were valued at $54,000 and the house and its lot were valued at $525,000. He arrived at his development rights valuation of $492,000 by subtracting the post-condemnation valuation of $579,000 from the pre-condemnation valuation of $1,071,000.

Additionally, Scotti testified that "the 750 feet of roadway and the $120,000 of engineering that formed the basis for [Flanagan's] opinion of super-adequacy has already been accounted for in their original valuation of the subdivision." With that, he testified that Flanagan had double counted costs when conducting her analysis. Specifically, on cross-examination Scotti testified, "[I]f she was going to use the super-adequacy, [Flanagan] should have included the costs of the 750 feet of roadway and the $110,000 for additional engineering in her analysis as an expense. By not doing that, she is double counting, leading to a misleading report." On rebuttal, Flanagan stated that Scotti's approach was flawed because he presumed that the property would have been developed after the condemnation, which, according to Flanagan, could not happen.

The trial justice issued a written decision on September 12, 2019. She began by noting that the parties agreed that the highest and best use of the property was an eight-lot subdivision and further stated that the measure of damages to be awarded was the fair market value of the property as of the date of condemnation. The trial justice found Scotti's testimony "to be more credible and persuasive." In particular, she noted, "He was articulate in his explanation to the [c]ourt that although the sales comparison method is usually the best way to appraise a property, it is not the best method for purposes of subdivision and development because of the differences that exist among various subdivisions."

In addition, the trial justice emphasized Scotti's point "that due to the wide varieties amongst different developments, the sales comparison approach alone would not adequately account for those differences[,]" and that he testified "that he had never seen the sales comparison method used for purposes of appraising a subdivision." The trial justice further found that "evidence alone of comparable sales is not probative." Taking into consideration "the unusual circumstances and factors in determining the value of a partially developed, eight-lot division[,]" she found Scotti's use of the development approach to be more probative. When valuing a subdivision, the trial justice stated, a court must consider all the factors that may be considered by a prospective purchaser. However, the trial justice did find Flanagan's testimony regarding the use of the sales comparison approach for the residence and the attached lot to be credible. The trial justice ultimately accepted Scotti's valuation of the development rights and found that plaintiffs should have been awarded $492,000 for the property.

Final judgment entered on September 25, 2019, in favor of plaintiffs, in the amount of $492,000 plus interest of $6,309.20. The total judgment amount is $498,309.20. The interest was calculated on $7,000—the difference between the award of $492,000 and the $485,000 that had been deposited in the court registry on March 9, 2012.

## II

## Standard of Review

"[Q]uestions of statutory construction are reviewed *de novo* by this Court." *Generation Realty, LLC v. Catanzaro*, 21 A.3d 253, 258 (R.I. 2011). "When construing a statute, 'our ultimate goal is to give effect to the purpose of the act as intended by the Legislature.'" *Id.* at 259 (quoting *D'Amico v. Johnston Partners*, 866 A.2d 1222, 1224 (R.I. 2005)). "We must determine and effectuate that legislative intent and attribute to the enactment the most consistent meaning." *Id.* (brackets omitted) (quoting *Ryan v. City of Providence*, 11 A.3d 68, 71 (R.I. 2011)). In determining the intent of the Legislature, we examine "the language, nature, and object of the statute." *Berthiaume v. School Committee of City of Woonsocket*, 121 R.I. 243, 247, 397 A.2d 889, 892 (1979).

"[W]hen the language of a statute is clear and unambiguous, this Court must interpret the statute literally and must give the words of the statute their plain and ordinary meanings." *Planned Environments Management Corp. v. Robert*, 966 A.2d 117, 121 (R.I. 2009) (quoting *Accent Store Design, Inc. v. Marathon House, Inc.*, 674 A.2d 1223, 1226 (R.I. 1996)). Further, we have stressed that we "simply apply the plain meaning of the statute; it is not within our power to read language into a statute which the General Assembly chose not to put there." *Shine v. Moreau*, 119 A.3d 1, 10 (R.I. 2015). "[I]nterpretation of an ambiguous statute 'is grounded in

policy considerations and we will not apply a statute in a manner that will defeat its underlying purpose.'" *Town of Burrillville v. Pascoag Apartment Associates, LLC*, 950 A.2d 435, 446 (R.I. 2008) (quoting *Arnold v. Rhode Island Department of Labor and Training Board of Review*, 822 A.2d 164, 169 (R.I. 2003)).  Importantly, "under no circumstances will this Court 'construe a statute to reach an absurd result.'" *Generation Realty*, *LLC*, 21 A.3d at 259 (quoting *Kaya v. Partington*, 681 A.2d 256, 261 (R.I. 1996)).

### III

### Discussion

The plaintiffs raise two issues on appeal.  First, plaintiffs argue that the trial justice committed reversible error in denying both their petition to compel purchase in fee and their subsequent motion to reconsider that decision and order.  In the alternative, plaintiffs contend that the trial justice committed reversible error in rejecting the comparable sales method of valuation and adopting a hybrid approach utilizing both the comparable sales method and the land development method to determine the fair market value of the property.

The plaintiffs submit that, in rendering the March 1, 2016 decision on their petition to compel, the trial justice "essentially ignored the significance of the operative and mandatory language of" § 45-50-13(a)(5) and arbitrarily and erroneously imposed a time limitation that was "in contravention of the plain

language of the statute, as well as a misapplication of the statute." The plaintiffs contend that the trial justice focused "on the amount of time which had passed since the condemnation originally occurred, during which the [plaintiffs] actively challenged the constitutionality of the entire statute[.]" (Emphasis omitted.) Ultimately, plaintiffs assert that they filed their petition to compel purchase in fee within a reasonable amount of time.

The plaintiffs argue that § 45-50-13(a)(5) should have been strictly construed to allow them to seek the relief that the statute provides. The defendant disagrees, arguing that the trial justice was correct in finding that the granting of a petition to compel purchase in fee "on the eve of trial" would violate rules of statutory construction.

Section 45-50-13(a)(5) provides:

> "In the event the authority has initiated condemnation proceedings for development rights, the original affected owner may notify the authority and the superior court of his or her request that the authority take a fee simple interest in the land. Upon notification, the authority has the power to acquire the land in fee simple by the exercise of the power of eminent domain and shall exercise power to acquire a fee simple interest in the land."

The terms of the statute clearly indicate that the authority "shall" acquire property in fee simple if the property owner properly notifies both the authority and the Superior Court of the request for the authority to purchase the property in fee simple. However, the statute does not make clear how much time is afforded to a property

- 17 -

owner to notify the appropriate entities of this election. As noted by the trial justice, the statute does not contain a time limit for notification of a property owner's request for his or her land to be purchased in fee simple.

The question of whether there is a time limit for a property owner to request that the authority purchase his or her property in fee simple is a novel issue before this Court. While § 45-50-13(a)(5) does not expressly impose a time limit for a property owner's request, we are of the opinion that the obligation of the authority to purchase property in fee simple, if a property owner so requests, is not everlasting. Reading § 45-50-13(a)(5) as allowing for an ongoing, mandatory obligation of the authority to purchase property in fee simple produces an entirely absurd interpretation of the statute.

"[I]f a mechanical application of a statutory definition produces an absurd result or defeats legislative intent, this [C]ourt will look beyond mere semantics and give effect to the purpose of the act." *Labbadia v. State*, 513 A.2d 18, 22 (R.I. 1986) (quoting *State v. Delaurier*, 488 A.2d 688, 694 (R.I. 1985)). It is clear that the purpose of § 45-50-13(a)(5) is, in situations where condemnation proceedings have commenced, to provide a property owner—upon notification to the court and the authority—with the ability to have his or her land purchased by the authority in fee simple. While the statute was devised to provide property owners compensation for their land, specifically for the authority seeking development rights to acquire land

in fee simple, we cannot say that the Legislature intended for this opportunity to be available indefinitely. *See Ocean Road Partners v. State*, 670 A.2d 246, 253 (R.I. 1996) ("[W]e are of the opinion that the statutory-condemnation procedure was designed to award fair compensation for land taken for public use but was not intended to provide unjust enrichment to a condemnee at the expense of the state.").

It is in our opinion a nonsensical view that an authority acquiring development rights must anticipate the chance that a property owner could request that the property be purchased in fee simple at any time after the original acquisition has occurred. This Court has previously explained that statutes of limitation are imposed to eliminate this very element of surprise. *See generally Ryan v. Roman Catholic Bishop of Providence*, 941 A.2d 174, 180, 181 (R.I. 2008) (noting that "[s]tatutes of limitation serve important societal purposes[,]" including preventing surprises through the filing of claims that have remained idle, and thus resulting in lost evidence, inaccurate memories, and unavailable witnesses).

As a result of our concern with the lack of a time limitation in § 45-50-13(a)(5), and because it would create an absurd result to interpret the statute as not having a time limit, we construe the statute to impose an element of reasonableness. This result is consistent with other interpretations by this Court of statutes that do not contain strict time limitations. *See Ucci v. Town of Coventry*, 186 A.3d 1068, 1074 (R.I. 2018) (holding that a town failed to accept an offer of

- 19 -

dedication of property within a reasonable time and thus forfeited its right to accept the purported offer); *Downey v. Carcieri*, 996 A.2d 1144, 1152 (R.I. 2010) (construing "the statutory language 'heretofore provided' as containing an element of reasonableness"); *Raso v. Wall*, 884 A.2d 391, 395 (R.I. 2005) (construing the term "at any time" in a statute as meaning at any *reasonable* time). Therefore, the question becomes whether plaintiffs filed the petition in a timely manner.

In order to determine whether plaintiffs filed the petition to compel within a reasonable time, we must first ascertain when the condemnation proceedings were initiated. While the *legal proceedings* in the present case date back to 2006, when plaintiffs were notified of the appointment of an appraiser and were requested to appoint their own appraiser, it cannot be said that the *condemnation proceedings* commenced in 2006. We do not equate notification of the appointment of an appraiser with the initiation of condemnation proceedings.

In 2012 defendant filed a petition requesting that the Superior Court determine the sum of money that would satisfy the claims of all persons interested in the development rights and to issue an order allowing defendant to deposit the sum in the Superior Court registry. On March 9, 2012, the trial justice determined the sum, which was later reduced, that was sufficient to satisfy all claims of persons interested in the development rights of land; defendant deposited the funds on that same day. It is our opinion that, with defendant's filing of the petition requesting the Superior

Court to determine the sum of money and its subsequent deposit, defendant initiated the condemnation proceedings on March 9, 2012. Once the funds were deposited in the registry, the authority acquired the development rights, and plaintiffs were then able to file their petition for assessment of damages. *See* § 45-50-13(c). That is, it was not until March 9, 2012, that plaintiffs' ownership of the development rights was transferred to defendant, and, consequently, the window for plaintiffs to file their petition to compel in a timely manner was opened.

We have previously held that the determination of reasonableness turns on the facts of each particular case. *See Zeilstra v. Barrington Zoning Board of Review*, 417 A.2d 303, 307-08 (R.I. 1980) (interpreting a statute's language that filing an appeal be made "within a reasonable time" to depend upon the facts of the case and finding that a five-week time frame was reasonable). In the present case, plaintiffs filed their petition for assessment of damages on April 22, 2015, and approximately eight months later filed their petition to compel purchase in fee simple, on December 7, 2015.

Therefore, upon consideration of the facts of this case, we are unpersuaded that a lapse of less than four years—from March 2012 until December 2015—is an unreasonable amount of time. *See Reitsma v. Pascoag Reservoir & Dam, LLC*, 774 A.2d 826, 838 (R.I. 2001) (noting that states have adopted the statutory periods for adverse possession—ten years, for example—when there were no statutes of

limitation for inverse condemnation actions). Accordingly, we are satisfied that plaintiffs' filing of their petition to compel purchase in fee in December 2015 was timely.

The plaintiffs also assert that defendant's claim of prejudice for possibly having to deposit additional monies into the court registry was not related to any "alleged delay by the [plaintiffs] in requesting the taking in fee." The plaintiffs argue that their house was located on the property irrespective of whether the taking was in fee or for the development rights. They assert that the appraisers did in fact "consider the full value of the [p]roperty in fee as of the date of taking * * * in order to calculate the value of the development rights to the [p]roperty." Simply put, plaintiffs contend that the delay did not cause prejudice to defendant, and that the trial justice thus erred in finding that the doctrine of laches applied.

The defendant emphasizes that plaintiffs filed the petition at the eleventh hour and agrees with the trial justice that defendant would have had to alter its theory of damages on the eve of trial. The defendant avers that plaintiffs' negligence in waiting until 2015 to file their petition was "gross and inexplicable[.]" Moreover, defendant argues that (1) defendant would have to pay for the value of plaintiffs' residence, and (2) plaintiffs could claim statutory interest on the amount of the home, which would be over 108 percent today.

"Laches is an equitable defense that precludes a lawsuit by a plaintiff who has negligently sat on his or her rights to the detriment of a defendant." *Branson v. Louttit*, 213 A.3d 417, 428 (R.I. 2019) (quoting *Hazard v. East Hills, Inc.*, 45 A.3d 1262, 1269 (R.I. 2012)). "The defense of laches 'involves not only delay but also a party's detrimental reliance on the status quo.'" *Hazard*, 45 A.3d at 1269-70 (quoting *Andrukiewicz v. Andrukiewicz*, 860 A.2d 235, 241 (R.I. 2004)). "[L]aches 'is not mere delay, but delay that works a disadvantage to another.'" *Id.* at 1270 (quoting *Chase v. Chase*, 20 R.I. 202, 203-04, 37 A. 804, 805 (1897)). The defense is equitable in nature, and the applicability of such defense "rests within the sound discretion of the trial justice." *Id.* A trial justice must apply a two-part test: (1) "there must be negligence on the part of the plaintiff that leads to a delay in the prosecution of the case"; and (2) "this delay must prejudice the defendant." *Id.* (quoting *School Committee of Cranston v. Bergin-Andrews*, 984 A.2d 629, 644 (R.I. 2009)).

The trial justice found that plaintiffs' "eleventh-hour [p]etition [was] not a 'mere delay' but an inexcusable delay that [was] to the detriment of the [defendant]." Furthermore, the trial justice determined that defendant would suffer prejudice because "[t]he value of the [p]roperty would not be the same as it was ten years ago." She reasoned that defendant would have to "reappraise the [p]roperty, account for interest, incur additional costs, and, most significantly, [defendant] would have to alter the theory of their damages case on the eve of trial."

First, for the reasons stated *supra*, we disagree that plaintiffs' delay in bringing the petition to compel purchase in fee was inexcusable. The record does not indicate that there was negligence on the part of plaintiffs that led to a delay. Furthermore, our review of the record reveals that the appraisers had already conducted a valuation of the property in fee simple as of the time of the taking in March 2012 as a part of their calculations of the value of the development rights. Therefore, it cannot be said that plaintiffs' delay caused any significant prejudice to defendant; accordingly, the trial justice erred in applying the doctrine of laches. *Cf. Hazard*, 45 A.3d at 1271 (highlighting that the delay of great magnitude in that case "unduly prejudiced [the] defendant's ability to produce evidence and procure witnesses to rebut [the] plaintiff's claims").

As a result of our holding that the plaintiffs' petition to compel purchase in fee was timely filed and that therefore the doctrine of laches does not apply, we need not address the plaintiffs' arguments that the trial justice erred in (1) denying the plaintiffs' motion to reconsider the decision and order denying their petition to compel purchase in fee and (2) rejecting the comparable sales method of valuation and accepting the hybrid approach proposed by the defendant's appraiser. Consistent with our holding, the taking in fee shall be based on the value of the property at the time of the taking in March 2012. *See Ocean Road Partners v. State*, 612 A.2d 1107, 1110 (R.I. 1992) ("The fair market value of the property is to be

assessed as of the time of the actual taking."); *Gorham v. Public Building Authority of City of Providence*, 612 A.2d 708, 713 (R.I. 1992) ("[A] taking * * * occurs when the right to enter and take possession accrues. The condemning authority's right to possession generally accrues upon the passage of title.") (internal citation omitted).

## IV

## Conclusion

For the reasons set forth in this opinion, we vacate the judgment and remand this case to the Superior Court with directions for the entry of an order compelling the taking in fee and for the valuation of a fee-simple interest in the sixty-seven acres of land.



# STATE OF RHODE ISLAND

## SUPREME COURT – CLERK'S OFFICE
Licht Judicial Complex
250 Benefit Street
Providence, RI  02903

## OPINION COVER SHEET

| | |
|---|---|
| **Title of Case** | V. George Mitola et al. v. Providence Public Buildings Authority. |
| **Case Number** | No. 2019-420-Appeal.<br>(PC 15-1646) |
| **Date Opinion Filed** | May 9, 2022 |
| **Justices** | Suttell, C.J., Goldberg, Robinson, Lynch Prata, and Long, JJ. |
| **Written By** | Chief Justice Paul A. Suttell |
| **Source of Appeal** | Providence County Superior Court |
| **Judicial Officer from Lower Court** | Associate Justice Sarah Taft-Carter |
| **Attorney(s) on Appeal** | For Plaintiffs:<br><br>Michael L. Mineau, Esq. |
| | For Defendant:<br><br>Thomas C. Angelone, Esq.<br>Mal A. Salvadore, Esq. |